03-60486

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA CIV-SEITZ

CASE NO.: _____-Civ-SEITZ
( Related Case No.: 00-6309-Cr-SEITZ

MAGISTRATE JUDGE
SORRENTINO

MICHAEL BUCCINNA,

        Petitioner,

vs.

UNITED STATES OF AMERICA,

        Respondent.
_____/

## PETITIONER MICHAEL BUCCINNA'S MOTION TO VACATE, SET ASIDE OR CORRECT JUDGMENT AND SENTENCE PURSUANT TO 28 U.S.C. § 2255 AND MEMORANDUM OF LAW IN SUPPORT THEREOF

COMES NOW, the Petitioner, MICHAEL BUCCINNA, in the above entitled numbered cause who files this, his MOTION TO VACATE, SET ASIDE OR CORRECT JUDGMENT & SENTENCE PURSUANT TO § 2255, and in support thereof states the following:

### PRELIMINARY STATEMENT

In or about October, 2000, a federal grand jury for the Southern District of Florida indicted MICHAEL BUCCINNA ("Mr. Buccinna"), and several other individuals for violation of Title 18, United States Code, section 1962(d). The indictment consisted of 55-counts.



On or about January 28, 2002, Mr. Buccinna pleaded guilty to one count of the indictment charging a violation of 18 U.S.C. § 1962(d), pursuant to a written plea agreement between the parties.  In exchange for pleading guilty, the government agreed to dismiss the remaining counts of the indictment.

On April 12, 2002, this Court sentenced Mr. Buccinna to a term of 58-months imprisonment and a three year period of supervised release.

Mr. Buccinna did not exhaust his direct appeal rights. Thus, for the purposes of Title 28 U.S.C. § 2255 (amended), his conviction and sentence was/is deemed final on April 22, 2002, the last day for him to file a notice of appeal.

Mr. Buccinna is currently is serving his federal sentence at a federal correctional institution known as FCC-Coleman (LOW), Coleman, Florida 33521-1031.  The Custodian is P. LAIRD, Warden.

Mr. Buccinna now files this, his first motion to vacate his judgment and sentence pursuant to 28 U.S.C. § 2255 on the grounds he received ineffective assistance of counsel prior to and at the penalty phase in the instant criminal case, all in violation of his Sixth Amendment right to the U.S. Constitution.

## STATEMENT OF FACTS

From 1998 through January, 2001, JOHN MAMONE ("Mamone") provided protection to a substantial booking making operation located in the Southern District of Florida. Collections of the monies generated from the gambling business were directed by Mamone. Mamone obtained and otherwise employed the following individuals to assist him in the collection of the gambling debts from third parties: Mr. Buccinna, Mr. Russo, Mr. O'Sullivan, and others.

During the course of collecting monies and checks from the gamblers, Mamone directed that the checks be cashed at various check cashing stores in South Florida.

On two occasions, Mamone himself used direct physical violence in the attempted collection of loan shark payments. The first act of violence took place in 1997, when Mamone assaulted an individual, MICHAEL CAMPAGNANO, for non-payment on a loan, causing physical injury to him. The second assault on an individual, AL POLITA, occurred in March, 2000.

Specifically, Mamone had contacted Mr. Buccinna, via a cell phone, directing Mr. Buccinna to call AL POLITO. Mamone further instructed Mr. Buccinna to "tell him (Polito) to meet [Mamone] at Starbucks, and for [Mr. Buccinna] to come along. Mamone then told Mr. Buccinna that he (Mamone) would meet them both at the coffee shop. The call was then terminated. Mr. Buccinna called Mr. Polito informing him that Mamone wanted him (Polito) to meet them at the aforenamed coffee shop.

3

Mr. Polito agreed.

At the coffee shop, while Mr. Buccinna and Mr. Polito were standing outside, Mamone arrived in a vehicle driven by DAVID BELL, one of Mamone's close friend in the collection of gambling debts.  The following events unfolded:

> "[Mamone] told Mr. Bell to drive up to them, because [Mamone] didn't want to go into Starbucks. [They] (Bell and [Mamone]) pulled up to Mr. Buccinna and Mr. Polito and [Mamone] got out of the car. [Mamone] told Mr. Buccinna to get into the car during which he [Buccinna] sat in the front passenger seat. [Mamone] told Mr. Polito to also get into the car during which he sat in the back seat, directly behind the driver of the car Mr. Bell. [Mamone] then got in the back seat directly behind Mr. Buccinna, during which [Mamone] ask Mr. Bell to take a drive somewhere, he did.
>
> While Mr. Bell was driving, Mamone got into an argument with Al Polito. [Mamone] was upset by his deceitful behavior and impulsively slapped Polito in the face twice, causing no visual or factual injuries. When [Mamone] hit Mr. Polito, neither Buccinna nor Bell seen that it was going to occur. In fact, this occurrence was really spontaneous in the spert of the moment and not planned and/or premediated. [They] drove around for about five minutes or so, during which [Mamone] was talking with Mr. Polito and he was conversating back. [Mamone] told Mr. Bell to return to Starbucks. When [they] arrived at Starbucks, Al Polito and Buccinna exited the vehicle. [Mamone] then entered the front passenger seat and [they] (Mr. Bell and [Mamone] drove off."

AFFIDAVIT OF JOHN MAMONE, pp. 1-2; EXHIBIT "A".

Following the commencement of the instant criminal case, Mr. Buccinna informed his former trial counsel, BRIAN L. TANNEBAUM, that he did not know Mamone was going to assault Mr. Polito prior to or at the time of the aforementioned meeting. Further, Mr. Buccinna told his counsel that such an assault was not even foreseeable by him or the driver, Mr. Bell. Mr. Buccinna directed his counsel to interview Mr. Mamone.

After Mr. Buccinna pleaded guilty to one of the counts of the indictment, the probation officer submitted a Presentence Report which stated, in pertinent part, Mr. Buccinna's role in the offense:

> "Michael Buccinna, AKA 'Mikey Boots' assisted the Enterprise by receiving illegal proceeds from the criminal activity and by collecting extortionate extensions of credit. According to the Government, he is responsbile for laundering not more than $100,000 which was pledged from the Chemical Trust Fund."

PRESENTENCE REPORT, at ¶ 55.

The probation officer opined and otherwise recommended that Mr. Buccinna's offense level be increased by two levels as a result of the assault on Mr. Polita by Mamone.

In the absence of any objection being proffered by Mr. Buccinna's former trial counsel or efforts made to interview Mamone and present his testimony at sentencing, this Court adopted the Presentence Report in its entirety. In doing so, this Court increased Mr. Buccinna's base offense level by

two (2) levels, resulting in a higher guideline range. This Court sentenced Mr. Buccinna to a term of 58 -months imprisonment and a period of supervised release.

The instant § 2255 petition followed.

## ARGUMENT AND LAW

The Petitioner, MICHAEL BUCCINNA, submits that he received ineffective assistance of counsel at the penalty phase in the instant case, warranting a new sentencing hearing in the instant case as more fully argued below.

### Ineffective Assistance of Counsel - The Law.

The standard which must be applied in determining what constitutes ineffective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 688 (1984). The Court in Strickland held that "the proper standard of attorney performance is that of reasonably effective assistance," and that the burden is on the defendant to demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id., at 687-88.

In determining whether the defendant has met his burden,

> A Court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

Id. at 690.

6

The burden of proof for showing ineffective assistance of counsel is, and remains, on petitioner throughout a habeas corpus proceeding." Roberts v. Wainwright, 666 F.2d 517, 519 (11th Cir. 1982); Jones v. Kemp, 678 F.2d 929, 932 (11th Cir. 1982). The petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, at 694.

Finally, trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in exercise of reasonable professional judgment." Id. at 688-90. An evidentiary hearing is not required where the movant's allegations do not demonstrate prejudice resulting from the alleged errors of counsel. See, Harich v. Dugger, 844 F.2d 1464, 1471 n.7 (11th Cir. 1988)(en banc), cert. denied, 489 U.S. 1071 (1989).

Having said that, a defendant has the constitutional right to the assistance of counsel at every "critical stage of a proceeding against him or whenever his substantial rights . . . may be affected. Mempha v. Rahe, 389 U.S. 128, 134 (1967). Moreover, defense counsel is under an obligation to familiarize himself with the facts and law applicable to his client's criminal case. Correale v. United States, 479 F.2d 944 (1st Cir. 1973). "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691,

104 S.Ct. at 2066. Counsel has been found to be ineffective for failing to argue sentencing issues that <u>may</u> have resulted in different and more favorable sentence. <u>See</u>, <u>United States v. Ford</u>, 918 F.2d 1343, 1350 (8th Cir. 1990)(held counsel's falure to argue for acceptance of responsibility in light of commentary which could have provided the defendant with the reduction, denied defendant a fair sentencing); <u>United States v. Headley</u>, 923 F.2d 1079, 1084 (3rd Cir. 1991)(held ineffective assistance where counsel failed to argue for a reduction for a minor role in the offense, given the court's willingness to consider such an adjustment).

**GROUND I.**    **COUNSEL'S FAILURE TO INVESTIGATE, INTERVIEW COOPERATING GOVERNMENT WITNESS MAMONE, AND OBJECT TO TWO-POINT ENHANCEMENT FOR ASSAULT ON AL POLITO CONSTITUTED DEFICIENT PERFORMANCE RESULTING IN PREJUDICE TO PETITIONER - - A CLEAR SIXTH AMENDMENT VIOLATION.**

In the instant case, the government knew that Petitioner was unaware of Mamone's intentions in assaulting Al Polito during the course of their conversation in the vehicle. In fact, as evidenced by the declaration of JOHN MAMONE, a prisoner now assigned to the witness protection program (WITSEC) and at an undisclosed location within the Federal Bureau of Prisons, no one knew that Mamone was going to assault Al Polito. Had Petitioner's counsel interviewed Mamone prior to or at the time of the sentencing hearing, Mamone would have told former trial counsel:

8

> "[T]here was no way for Mr. Buccinna
> to know what was about to occur between
> me and Polito because I didn;t know how
> I was going to react simply because my
> intent was to hear him out. I only reacted
> impulsively upon realizing Mr. Polito had
> deceived me."

AFFIDAVIT OF JOHN MAMONE ..., at p.3, ¶ 5.

In further support of what the government knew at the time it allowed this Court to impose the aforementioned enhancement, and as Mamone correctly points out in his affidavit and attachment thereto, the co-defendant, DAVID BELL took a similar position to which the government agreed, that is, Mamone's assualt (slaps to Mr. Polito's face) was an event not foreseeable. See, EXHIBIT "B"; DAVID BELL's Sentencing Transcripts dated 8/16/2002, at pp. 10-12.

At Mr. Bell's sentencing hearing, this Court, sua sponte, made the following observations and findings regarding the language in Mr. Bell's presentence report:

> THE COURT:    I did see that comment in the pre-
> sentence report. I also saw in the plea agreement
> there was the agreement that is was not foreseeable.
>           I recognize it does not affect his
> guidelines, however, it may well have an impact
> on the institution where he is incarcerated. Mr.
> McCormick.
>
> MR. McCORMICK: The second part of Mr. Harris'
> argument we don't take issue with. We don't
> think based on the evidence Mr. Bell was aware
> there was going to be physical violence used by
> Mamone. The violence in a nutshell was slapping
> Mr. Polito a few times and attempting to bite
> his ear.... We concede it wasn't reasonable fore-
> seeable that this type of violence would be used.

Id., pp. 11-12; Exhibit B.

In light of what the government knew, and the mere fact that Mamone was always readily available to be interviewed by Petitioner's former trial counsel, it is reasonable to conclude that any competent counsel would have felt compelled to conduct an investigation and interview Mamone. To simply allow the enhancement of the kind used in the calculation of Petitioner's base offense level to remain unchallenged and ignore the collateral consequences Petitioner would suffer as a result of said enhancement being sustained by this Court in the prison setting, a collateral consequence noted by this Court at Mr. Bell's sentencing hearing, clearly gives new meaning to the term "deficient performance."

Nonetheless, what is clear is that had Petitioner's former trial counsel interviewed Mamone, and objected to the assault enhancement proffered by the government in the presentence report, it is quite evident that not only would the government had to concede as it did in Mr. Bell's case, but there would have been clear and convincing evidence that the objection was due to be sustained.

Based on the foregoing argument, Mr. Buccinna submits that his counsel rendered ineffective assistance of counsel requiring a new sentencing hearing whereat he can present such evidence and argument via competent and persuasive counsel. In sum, Mr. Buccinna was denied effective assistance of counsel at one of the most important stages in the criminal process.

GROUND II.     THE GOVERNMENT'S FAILURE OR REFUSAL TO
PROVIDE FORMER TRIAL COUNSEL AND PETITIONER
EXCULPATORY DISCOVERY MATERIAL RELATING TO
MAMONE'S KNOWLEDGE OF THE FORESEEABILITY OF
THE ASSAULT ON AL POLITO RENDERED HIS COUNSEL'S
PERFORMANCE  INEFFECTIVE AS WELL AS THE
SENTENCING PROCEEDING FUNDAMENTAL UNFAIR AND
UNRELIABLE.

It is axiomatic that the government knew that
Mamone's assault on Al Polito was unforeseeable by any one.
In fact, Mamone clearly stated he did not even know he was
going to slap Al Polito until the moment occurred. The
government had an inherent and constitutional duty to disclose
such favorable and exculpatory evidence to  Petitioner and
his former trial counsel.  Moreover, the government's duty
extended to ensuring that erroneous information presented
to this Court, even through the probation department, be
immediately corrected. However, in the case sub judice, the
government didn't stand mute, but, rather pressed on with
the enhancement of the assault on Al Polito with respect to
Mr. Buccinna. This was wrong and rendered the sentencing
proceeding unreliable and fundamentally unfair. See, Kyles v.
Whitely, 514 U.S. 419, 115 S.Ct. 1555 (1995); McGurk v. Stenburg,
163 F.3d 470, 474 (8th Cir. 1998)("structural defects in the
constitution of the trial mechanisms" which so "affect[] the
frameword within which the trial proceeds" require automatic
reversal without showing of prejudice).

"[O]ur adversary system depends on a most jealous
safeguarding of truth and candor," United States v. Shaffer,

11

Equip. Co., 11 F.3d 450, 463 (4th Cir. 1993), and "[t]he
system can provide no harbor for clever devises or divert
the search, mislead opposing counsel or the court, or cover
up that which is necessary for justice in the end." Id. at
457-58.

The Government not only failed to disclose the favorable
information possessed by Mamone, but breached its duty of
candor and truth to the trial court as well as Petitioner.
As the Supreme Court firmly stated, "[attorneys] have a
'continuing duty to inform the Court of any developement which
may conceivably affect the outcome' of the litigation."
Tiverton Board of License Commissioners v. Pastore, 469 U.S. 238,
240, 105 S.Ct. 685, 686 (1985)(quoting Fusari v. Steinburg,
419 U.S. 379, 391, 95 S.Ct. 533, 540 (1975)(Burger, J., concurring))
(emphasis).

The Second Circuit expressely held in situations like
before this Court "[i]t is the materiality of the excluded
evidence to the presentation of the defense that determines
whether a defendant has been deprived of a fundamentally fair
trial . . . if the omitted evidence creates a reasonable doubt
that did not otherwise exist[,]' constitutional error has been
committed." Rosario v. Kuhlman, 839 F.2d 918, 925 (2nd Cir.
1988)(quoting United States v. Angers, 427 U.S. 97, 112-13,
96 S.Ct. 2392, 2401-02 (1976)); see also, Duren v. Hooper,
161 F,3d 655, 666 (11th Cir. 1998).

The Petitioner "has the burden of proving that [he] was prejudiced by trial counsel's performance." Gilbreath v. Head, 234 F.3d 547, 551 (**11th Cir.** 2000). "The Supreme Court has explained that habeas petitioners must affirmatively prove prejudice because '[a]ttorny errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.'" Id.; see also Glock v. Moore, 195 F.3d 625m 635-36 (**11th Cir.** 1999).

Like in the instant case, "the result of the proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.'" Gonzalez-Soberal v. United States, 244 F.3d 273, 277 (1st Cir. 2001)(quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).

Under the principles of Kyles, supra, Brady v. Maryland, 373 U.S. 83 (1963), and Strickland, Petitioner was precluded from effectively challenging the enhancement for the assault on Al Polito due to the government's withholding of exculpatory evidence. The case sub judice is similar to Gonzalez-Soberal, supra, and like the panel held in that appeal from a denial of a section 2255 petition raising a like ineffective assistance of counsel claim, Petitioner respectfully submits that this Court should grant the instant habeas section 2255 petition on this claim and vacate his sentence in order that a new sentencing hearing can be held, meeting all constitutional requirements as a matter of law.

13

## CONCLUSION

**WHEREFORE,** the Petitioner, MICHAEL BUCCINNA, requests this Court to grant the instant section 2255 petition based on the foregoing argument and law; and enter an order granting same and other relief this Court deems proper and just.

March 16, 2003
Coleman, Florida.

Respectfully submitted,

MICHAEL BUCCINNA
FCC-Coleman (LOW)
P.O. Box 1031
Coleman, FL 33521-1031

PETITIONER.

## VERIFICATION

I, MICHAEL BUCCINNA, hereby certify that the foregoing facts are true and correct, done under penalties of perjury on this 16th day of March, 2003.

MICHAEL BUCCINNA

## CERTIFICATE OF SERVICE

I, MICHAEL BUCCINNA, hereby certify that a true and correct copy of the foregoing and attachments thereto were served on **AUSA J. BRIAN McCORMICK 99 N.E.4th Street Miami, FL 33132**, Counsel for UNITED STATES, by placing same in the prison legal mailbox postage prepaid 1st class on this **16th day of March, 2003.**

Michael Buccinna
P.O. Box 1031
Coleman, FL 33521-1031

14

# APPENDIX A

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

MICHAEL BUCCINNA,                          :

           Petitioner,

                        :

    v.                                    :       Dkt No.:00-6309-CR-PAS

                        :

UNITED STATES OF AMERICA,

           Respondent. :

-----------------------------x


### AFFIDAVIT OF JOHN MAMONE FILED IN SUPPORT OF MICHAEL BUCCINNA'S PETITION UNDER SECTION 2255 OF THE FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE

    JOHN MAMONE hereby declares under penalty of perjury:

    1. That I am currently under the custody and care of the Federal Bureau of Prisons. My present address is, Bureau of Prisons, Inmate Monitoring Section, 320 First Street, N.W., Washington, D.C. 20534.

    2. With regard to Mr. Buccinna, sometime between January, 2000 and April, 2000, I had called Mr. Buccinna on his cell phone. I had asked him to call AL POLITO and he responded by saying "okay". I then said, "tell him (Polito) to meet me at Starbucks, and for him (Michael Buccinna) to come along. I then told Mr. Buccinna that I would meet them both at the coffee shop, and Buccinna called me back and informed me that he would,

meet me in ten minutes.

　　　　3. A short time later, I arrived at the coffee shop
in a vehicle which was being driven by my friend DAVID BELL.
Mr. Buccinna and Mr. Polito where standing in the parking lot
in front of Starbucks when we arrived. I told Mr. Bell to drive
upto them, because I didn't want to go into Starbucks. We (Bell
and myself) pulled upto Mr. Buccinna and Mr. Polito and I got
out of the car.  I told Mr. Buccinna to get into the car during
which he sat in the front passenger seat. I told Mr. Polito to
also get into the car during which he sat in the back seat,
directly behind the driver of the car Mr. Bell. I then got in
the back seat directly behind Mr. Buccinna, during which I ask
Mr. Bell to take a drive somewhere, he did.

　　　　4. While Mr. Bell was driving, I got into an argument
with Al Polito. I was upset by his deceitful behavior and impul-
sively slapped Polito in the face twice, causing no visual or
factual injuries. When I hit Mr. Polito, neither Buccinna nor
Bell seen the incident occur, moreover, neither of them were
aware that it was going to occur. In fact, this occurrence was
really spontaneous in the spert of the moment and not planned
and/or premeditated. We accually drove around for about five
minutes or so, during which I was talking with Mr. Polito and
he was conversating back. I told Mr. Bell to return to Starbucks.
When we arrived at Starbucks, Al Polito and Buccinna exited
the vehicle. I then entered the front passenger seat and we

-2-

we (Mr. Bell and I) drove off.

5. That during the process of my criminal case, I was recently informed that Mr. Buccinna's federal sentence in relation to this case was enhanced substantially as a direct result of the occurrence with Al Polito. It is my understanding that it has been suggested that  the incident between me and Mr. Polito was in some way foreseeable by Mr. Buccinna. This is not true——there was no way for Mr. Buccinna to know what was about to occur between me and Polito because I didn't know how I was going to react simply because my intent was to hear him out. I only reacted impulsively upon realizing Mr. Polito had deceived me.

6. That I have furnished upon the petitioner (Mr. Buccinna) attached hereto a true and correct copy of Mr. Bell's sentencing transcript (portions only) which I think may be relevant to Mr. Buccinna's petition which seeks relief for such enhancement. It is clearly detailed by the Honorable Patrica A. Seitz and Assistant United States Attorney Brian McCormick, that such enhancement was addressed and concluded that the defandant David Bell had minimal involvement as Mr. Buccinna and he did not receive any enhancement. In my opinion, there is a disparity between Mr. Bell and Mr. Buccinna.

I HEREBY DECLARE under penalty of perjury that the foregoing statement is true and correct to the best of my knowledge and belief pursuant to 28 U.S.C. § 1746.

-3-

Dated:      Washington, D.C.
            January 30, 2003

                              BY: _____
                                  JOHN MAMONE        PR-SE
                                  United States Dept. of Justice
                                  Federal Bureau of Prisons
                                  Inmate Monitoring Section
                                  320 First Street, N.W.
                                  Washington, D.C. 20534

-4-

**AFFIDAVIT OF JOHN MAMONE**
**NOW OFFERS AS A PROPOSED EXHIBIT**
**PORTIONS (ONLY) OF DAVID BELL'S**
**SENTENCING TRANSCRIPT**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6309


THE UNITED STATES OF AMERICA,
                         Plaintiff


          VS.

DAVID BELL,
          Defendant


- - -

SENTENCING HELD 8-16-02

BEFORE THE HONORABLE PATRICIA A. SEITZ

UNITED STATES DISTRICT JUDGE
- - -

APPEARANCES:

FOR THE GOVERNMENT:

BRIAN McCORMICK, A.U.S.A.
99 N.E. 4th Street
Miami, Florida


FOR THE DEFENDANT:

JEFFREY, M. HARRIS, ESQ.
One East Broward Boulevard
Fort Lauderdale, Florida

REPORTED BY:
PATRICIA SANDERS, RPR

Proceedings recorded by mechanical stenography, transcript
produced by computer aided transcription.

1   would like me to take into consideration, Mr. Bell.  I have

2   read your letter.  You can speak to Mr. Harris and decide

3   whether you want to speak on your behalf, whether you want to

4   have Mr. Harris speak on your behalf or if you want to have

5   both of you speak on your behalf.  You don't have to.  Talk

6   to Mr. Harris and decide what you would like to do.

7         MR. HARRIS:  There's one other issue in the PSI,

8   while it doesn't affect his scoring of points on the

9   sentencing guidelines, it may have a very significant impact

10  while he is incarcerated, that is the unresolved issue of

11  whether or not Mr. Palito in the extortion count received

12  bodily injury.  That was in paragraph 43.

13        I think the probation officer still maintains there

14  was bodily jury.  This presentence report follows him into

15  the institution and that comment can adversely affect him on

16  any furloughs or programs he may be allowed to take.

17        I think the notes as referred to by the very

18  competent probation officer while well meaning may be

19  misinterpreted.

20        The note from the sentencing guidelines -- I want

21  to quote that one sentence from the quote of the guidelines

22  which says, any significant injury, they use the word

23  significant.

24        They draw the example of an injury that is painful

25  or obvious or is a type for which medical or other ordinary

1  treatment would be sought.  I would respectfully suggest in

2  this particular case two things, number one, that type of

3  injury was not incurred by Mr. Palito.  It was a couple of

4  slaps to the face, which I don't want to minimize, but I

5  don't believe there was any bodily injury.

6          Also, Mr. Bell was the driver of the vehicle and he

7  would not have known necessarily that physical means were

8  going to be used.

9          While we acknowledge he knew there would be verbal

10 comments made to try to induce or encourage the payment of

11 monies, as a driver he did not know the strikes would occur.

12         I would like to try to resolve that in the

13 pre-sentence report.  As I said, it does not affect the

14 additional scoring.

15         THE COURT:  I did see that comment in the

16 pre-sentence report.  I also saw in the plea agreement there

17 was the agreement that it was not foreseeable.

18         I recognize it does not affect his guidelines,

19 however, it may well have an impact on the institution where

20 he is incarcerated.  Mr. McCormick.

21         MR. McCORMICK:  The second part of Mr. Harris'

22 argument we don't take issue with.  We don't think based on

23 the evidence Mr. Bell was aware there was going to be

24 physical violence used by Mr. Mamone.  The violence in a

25 nutshell was slapping Mr. Palito a few times and attempting

1    to bite his ear.  We don't attribute that to Mr. Bell.

2    Mr. Bell was kind of a serendipitous participant.       .

3           He was asked to drive Mr. Mamone over to the scene

4    where this took place.  We know Mr. Bell was aware this

5    particular individual Mr. Palito was a loan shark victim.  We

6    concede it wasn't reasonably foreseeable that this type of

7    violence would be used.

8           We do contend however there was violence used.  The

9    second part of the argument it wasn't reasonably foreseeable

10   that he would know we would agree with.  That would be our

11   response.

12          THE COURT:  Why don't we do this, if this is

13   agreeable to the parties, simply add in there the sentence

14   the Government said   what was the exact wording from the

15   plea agreement?

16          MR. McCORMICK:  It was not readily foreseeable this

17   would take place.

18          THE COURT:  All right.  If you could make that

19   modification, Mr. Eisinger.  I think it is important that

20   paragraph 62 remain with the language that the Government has

21   agreed to.

22          MR. HARRIS:  We agree.  We have no problem with

23   that.  Mr. Bell is prepared to address the Court if the Court

24   would entertain that.

25          THE COURT:  Go ahead, Mr. Bell.

# APPENDIX B

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6309


THE UNITED STATES OF AMERICA,
                              Plaintiff


             VS.


DAVID BELL,
             Defendant


- - -

SENTENCING HELD 8-16-02

BEFORE THE HONORABLE PATRICIA A. SEITZ

UNITED STATES DISTRICT JUDGE

- - -

APPEARANCES:

FOR THE GOVERNMENT:

BRIAN McCORMICK, A.U.S.A.
99 N.E. 4th Street
Miami, Florida


FOR THE DEFENDANT:

JEFFREY, M. HARRIS, ESQ.
One East Broward Boulevard
Fort Lauderdale, Florida

REPORTED BY:
PATRICIA SANDERS, RPR

Proceedings recorded by mechanical stenography, transcript
produced by computer aided transcription.

1          COURTROOM DEPUTY:  OO-6309, United States of

2   America versus David Bell.  Attorneys please note your

3   appearances.

4          MR. McCORMICK:  Brian McCormick for the United

5   States.  With me at counsel table is Special Agent Patrick

6   Brodsky and Special Agent Chris Sterrit of the FBI.

7          THE COURT:  Good morning.

8          MR. HARRIS:  Good morning.  Jeff Harris for David

9   Bell who is present.

10          MR. EISINGER:  Todd Eisinger on behalf of the

11   Probation Department, standing in for Probation Officer

12   Wilmont.

13          THE COURT:  We're here today to impose sentence on

14   Mr. Bell.  Mr. Bell, have you had an opportunity to review

15   the presentence investigation report that was prepared by

16   Miss Wilmont?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  I know Mr. Harris, you filed a number

19   of objections.  It looks like most of them are resolved that

20   have any impact on the guidelines calculations.

21          MR. HARRIS:  That's correct, Your Honor.

22          THE COURT:  Are there any factual corrections that

23   need to be made in the pre-sentence report that none of us

24   have previously caught?

25          MR. HARRIS:  No, Judge.  I think it's been pretty

 1   much gone over and corrected in that regard.

 2        THE COURT:  I have also had an opportunity to

 3   review the letter Mr. Bell sent me dated August the eleventh.

 4   And the letters that Mr. Harris has filed.

 5        I see that the Government has filed a 5K1.1 motion.

 6   We'll get to that shortly.  The probation officer calculated

 7   the offense level at a 24 and a criminal history at a level

 8   two.

 9        In arriving at that calculation the probation

10   officer did not give Mr. Bell the three point downward

11   adjustment for acceptance of responsibility.

12        I looked in the pre-sentence report filed and it

13   did summarize the terms of the plea agreement, which the

14   parties agreed, that Mr. Bell should get the full three level

15   downward adjustment for acceptance of responsibility.

16        Mr. Bell, I usually go along with the plea

17   agreement.  In this instance, I find myself sort of at odds

18   with Probation and the plea agreement.

19        Although, I don't see I am authorized to do this by

20   the guidelines, I would give you the one point off for the

21   timely coming forth and saving the Government going to trial.

22        And I would give you one half or one additional

23   point for the acceptance of responsibility out of the two.  I

24   am taken by your letter.  I have to tell you I have read your

25   letter before I went through the pre-sentence report.

PATRICIA W. SANDERS, OFFICIAL COURT REPORTER
(305) 523-5654

1    It was extremely articulate and it appeared to be

2  remorseful and appears to have a plan for your future life.

3  I have to tell you when I then completed the presentence

4  investigation report and saw that the crimes for which you

5  pled guilty here are very similar to the ones that sent you

6  to jail for three years in the early part of the nineties and

7  that you were out on supervised release and you completed the

8  supervised release successfully in 96,  I am concerned

9  Mr. Bell, that you've got two strikes and this is really sort

10  of the last stop before the cliff.  Because if this ever

11  happens again you will have struck out.

12    What I plan on doing is I am going to find the

13  offense level should be a level 22 with a criminal history

14  category of a 2 rather than the 24.

15    I am concerned and do think one should -- the fact

16  that he had this prior experience so recent in time and so

17  similar and then once arrested and out on bond knowing what

18  his responsibilities were on bond yet continued to engage in

19  the conduct until he had the wake-up call with the rearrest

20  and placing him in prison.

21    There should be some recognition for the fact he

22  breached trust.  That's the whole reason why we have the

23  criminal code.  We are a society that is governed by the rule

24  of law and that each person will conduct themselves in a

25  responsible manner and respect the fact we have laws to

1    govern our relations with each other so we can have a society

2    in which we can feel safe and pursue the goal of life,

3    liberty and the pursuit of happiness.

4          When you violate the law for your own self gain

5    there are consequences.  That's how I arrive at -- although I

6    don't find any precedence for it in the guidelines -- that is

7    how I am going to give you the one point off for the

8    acceptance of responsibility and the one level downward

9    departure because you timely accepted.

10          I think that sort of activity is responsible and

11    should be encouraged.  So we start at a level 22 with a

12    criminal history category of two, which is a guidelines range

13    of --

14          MR. EISINGER:  41 to -- 46 to 57 months, I'm sorry.

15          THE COURT:  46 to 57.  All right.  I have also had

16    a chance to review the presentence investigation report as to

17    Mr. Bell's financial circumstances and whether or not he is

18    able to pay a fine on top of the restitution which is

19    mandatory.

20          The Court will adopt the recommendation of Miss

21    Wilmont that he's not able to pay a fine on top of the

22    restitution, so I will not impose a fine.  We now turn to the

23    Government's 5K1.1 motion.

24          MR. McCORMICK:  We filed the motion this morning.

25    Our recommendation is that the Court reduce the defendant's

 1    sentence from    he low end of the guidelin   , one third of the

 2    sentence that is to be imposed.  Basically we're asking the

 3    Court to consider the cooperation of Mr. Bell in the case of

 4    the United States versus John Mamone, et al.

 5          Mr. Bell agreed to be a witness and was debriefed

 6    on numerous occasions, in fact was going to be a witness

 7    against the Morganstern brothers before Judge Dimitrouleas.

 8          On the eve of trial both Morganstern brothers pled

 9    guilty and entered plea agreements so it became unnecessary.

10    It became very evident Mr. Bell's cooperation in that case

11    was very material to our case.

12          Once the case against Mr. Silvestry began it was

13    not necessary to call Mr. Bell because he was relatively

14    collateral to the matters the Government intended to present

15    before the jury.

16          So we're asking the Court to grant this particular

17    motion on the strength of Mr. Bells full and total

18    cooperation in this particular case.

19          I have other matters I could bring to Your Honor's

20    attention sidebar concerning the plea agreement that Mr. Bell

21    entered into and the impact it could have on future actions

22    by the Court.  I'll be happy to do that.

23          MR. HARRIS:  Your Honor, this particular part of

24    the proceeding I would ask that it be sealed.

25          THE COURT:  All right.  Miss Sanders, if you would

PATRICIA W. SANDERS, OFFICIAL COURT REPORTER
(305) 523-5654

1   seal this poi .on of the record.

2               SEALED PORTION NOT TRANSCRIBED.

3          MR. HARRIS:  Thank you, Judge.

4          THE COURT:  All right.  I noticed from the

5   probation officer's sheet there are a number of victims

6   identified.  The total amount of the loss is identified as

7   over $1,000,000.

8          The plea agreement provides for forfeiture and

9   restitution in the amount of 475,000.  That usually implies

10  there's an agreement he will not be jointly and severally

11  responsible for the total victim's loss.

12         I don't know whether or not I have the power to do

13  that.  I did see in the pre-sentence report that steps have

14  been made to fund that restitution of $475,000.

15         I am interested in getting a fund so that the

16  victims can be reimbursed.  That's of much greater benefit

17  than a nice piece of paper.

18         MR. HARRIS:  Judge, we have had extensive

19  discussions with the Government in regard to that point.  The

20  Government and defendant agree the restitution is in the

21  amount of 475.

22         There was an agreement and still is an agreement

23  that when the house is sold one half of the proceeds will go

24  to the Government for restitution.  We also have in our hand

25  a check for five thousand dollars today to -- made out to the

1    Department of Justice.  It is a cashiers check.  To help go

2    to the restitution.  Mr. Bell is prepared -- after analyzing

3    his finances -- desires after he comes out of his sentence of

4    incarceration to dedicate at least ten percent of his and his

5    wife's income towards the restitution goal.  This has all

6    been related to the Government prior to today.

7           THE COURT:  Mr. Bell, you are very blessed that you

8    have a life partner that is so committed to working with you

9    to get your life back on the right road.

10          If there is ever an ingredient that is critical for

11   the success of the people that appear in front of me to stay

12   on that road it is the commitment of one's life partner to

13   achieving that goal.

14          As I read the presentence investigation report it

15   looks like your wife is also willing to take on the

16   responsibility of providing for the -- to be the bread winner

17   in the family.

18          You are very blessed.  I hope you appreciate the

19   blessings you have been given that so many people do not

20   have.  So often how easily we are distracted with what we

21   think we need that we overlook the wealth that we have right

22   at hand and fail to say each moment, thank you Lord, thank

23   you for what we've been given.

24          On top of that you have four healthy kids.  I just

25   look at the number of people as I go to the neonatal center

1  and see how many children come into this world with all of

2  their parents' hopes and expectations and they arrive with

3  catastrophic problems that their parents have to struggle

4  with.

5          And you have been so incredibly blessed with

6  wonderful kids that have no one else to look to for

7  protection and for guidance than you.

8          If you do not provide a role model for them as to

9  what to be and how to use their gifts to make this a better

10  world then you have failed in the most fundamental

11  responsibility that you have been given when you are given

12  the gift of those four children.

13          And they are gifts.  I hope you realize you have

14  choices.  You can take the unique gifts you have been given

15  to be a role model for your children and produce a real

16  return in that your children will also be constructive and

17  contributing members to their community.

18          Just look around you today.  What a gift that kind

19  of commitment and unconditional love you have been given.

20  You have the closest thing on earth to what the spiritual

21  authors talk about of the unconditional love of your Creator

22  for you.

23          You get to experience it on a daily basis.  Please

24  don't look that gift -- overlook that gift.  Before I impose

25  sentence you have the right to share with me anything you

1   would like me to take into consideration, Mr. Bell. I have

2   read your letter.  You can speak to Mr. Harris and decide

3   whether you want to speak on your behalf, whether you want to

4   have Mr. Harris speak on your behalf or if you want to have

5   both of you speak on your behalf.  You don't have to.  Talk

6   to Mr. Harris and decide what you would like to do.

7         MR. HARRIS:  There's one other issue in the PSI,

8   while it doesn't affect his scoring of points on the

9   sentencing guidelines, it may have a very significant impact

10  while he is incarcerated, that is the unresolved issue of

11  whether or not Mr. Palito in the extortion count received

12  bodily injury.  That was in paragraph 43.

13         I think the probation officer still maintains there

14  was bodily jury.  This presentence report follows him into

15  the institution and that comment can adversely affect him on

16  any furloughs or programs he may be allowed to take.

17         I think the notes as referred to by the very

18  competent probation officer while well meaning may be

19  misinterpreted.

20         The note from the sentencing guidelines -- I want

21  to quote that one sentence from the quote of the guidelines

22  which says, any significant injury, they use the word

23  significant.

24         They draw the example of an injury that is painful

25  or obvious or is a type for which medical or other ordinary

2     this particular case two things, number one, that type of

3     injury was not incurred by Mr. Palito.  It was a couple of

4     slaps to the face, which I don't want to minimize, but I

5     don't believe there was any bodily injury.

6          Also, Mr. Bell was the driver of the vehicle and he

7     would not have known necessarily that physical means were

8     going to be used.

9          While we acknowledge he knew there would be verbal

10    comments made to try to induce or encourage the payment of

11    monies, as a driver he did not know the strikes would occur.

12         I would like to try to resolve that in the

13    pre-sentence report.  As I said, it does not affect the

14    additional scoring.

15         THE COURT:  I did see that comment in the

16    pre-sentence report.  I also saw in the plea agreement there

17    was the agreement that it was not foreseeable.

18         I recognize it does not affect his guidelines,

19    however, it may well have an impact on the institution where

20    he is incarcerated.  Mr. McCormick.

21         MR. McCORMICK:  The second part of Mr. Harris'

22    argument we don't take issue with.  We don't think based on

23    the evidence Mr. Bell was aware there was going to be

24    physical violence used by Mr. Mamone.  The violence in a

25    nutshell was slapping Mr. Palito a few times and attempting

1    to bite his ( ).  We don't attribute tha  to Mr. Bell.

2    Mr. Bell was kind of a serendipitous participant.

3         He was asked to drive Mr. Mamone over to the scene

4    where this took place.  We know Mr. Bell was aware this

5    particular individual Mr. Palito was a loan shark victim.  We

6    concede it wasn't reasonably foreseeable that this type of

7    violence would be used.

8         We do contend however there was violence used.  The

9    second part of the argument it wasn't reasonably foreseeable

10   that he would know we would agree with.  That would be our

11   response.

12        THE COURT:  Why don't we do this, if this is

13   agreeable to the parties, simply add in there the sentence

14   the Government said -- what was the exact wording from the

15   plea agreement?

16        MR. McCORMICK:  It was not readily foreseeable this

17   would take place.

18        THE COURT:  All right.  If you could make that

19   modification, Mr. Eisinger.  I think it is important that

20   paragraph 62 remain with the language that the Government has

21   agreed to.

22        MR. HARRIS:  We agree.  We have no problem with

23   that.  Mr. Bell is prepared to address the Court if the Court

24   would entertain that.

25        THE COURT:  Go ahead, Mr. Bell.

PATRICIA W. SANDERS, OFFICIAL COURT REPORTER
(305) 523-5654

1          TH  DEFENDANT:  Since my relea   from prison in

2    1993 I have had every intention of being a law abiding

3    citizen.  I was lucky enough to have the opportunity to go

4    into the trucking business and was able to utilize those

5    talents.  That to me was gratifying.

6          My outlook on life was changed dramatically when my

7    first son was born.  I had two more boys and a girl.  My life

8    was devoted to giving them the best that life had to offer.

9          I had everything I needed.  I took for granted how

10   lucky I was to have a good family and a job I made a good

11   living at.  I once again found myself in trouble and I have

12   no one to blame but myself.

13         Over the last year and half I have done everything

14   in my power to correct all those bad decisions.  I am ready

15   to accept the consequences for my actions.

16         I ask you to take into consideration the adverse

17   affect a long prison sense would have on my family.  The

18   worst punishment of all has given been putting them all

19   through this.

20         My wife that I have been with for 16 years has been

21   through this one time and the shame I feel for her to have to

22   go back through this again is indescribable.

23         My father has been through this once.  He has also

24   been through this with another son.  As a father myself I can

25   only imagine how this can make him feel.

1    My mother who is here today has had to wonder for

2    the past two years what was happening to me.  I was unable to

3    inform her, as I was not sure what was happening to me.

4         This I am sure has been devastating.  I had many

5    people that count on me every day and I have let them all

6    down by my actions.

7         Leniency on me would not be taken for granted.  I

8    would see it as my last chance.  This last chance would not

9    be wasted.  I will fulfill my obligation and pay the

10   restitution to the victim.  I will live a simple life and not

11   take it for granted again.  Thank you.

12        THE COURT:  Thank you very much, Mr. Bell.  May I

13   ask you keep those comments you have made here and pull them

14   out each year and review them.  Use them as a means to sort

15   of assess where you have been the past year and where you are

16   going the next year.

17        It is important to build those type of rituals into

18   our lives the same way as we have a birthday celebration each

19   year or you have a New Years resolution.

20        I think the one benefit of getting older is you

21   suddenly begin to realize that time is moving much more

22   quickly than you ever imagined and it's important to look

23   back and celebrate the good things, make a commitment to

24   change the negative and then start anew.  The power of the

25   human spirit to hope for the best is what will propel you

1    forward.  The power to be grateful for the gifts that you

2    have will be what will continue a forward movement even

3    during the rough times.

4          May you use those two engines, the hope that gets

5    you started and the gratitude for what you have been given

6    that will keep you going.

7          Having considered the statements by all the

8    parties, a review of the pre-sentence report, the Court will

9    grant the 5K1.1 motion and depart downward from 46 months to

10   30 months.  The Court has already ruled no fine shall be

11   imposed.  The restitution is mandatory.

12         Pursuant to Sentencing Reform Act of 1984 it is the

13   judgment of the Court that the defendant David Bell is hereby

14   committed to the custody of the Bureau of Prisons to be

15   imprisoned for a term of thirty months as to Count 1.

16         Since the victims' losses are not yet ascertainable

17   the Court shall set a date for the final determination of the

18   victims' losses, not to exceed ninety days after sentence is

19   imposed.

20         Upon release from imprisonment you will be placed

21   on supervised release for a term of three years.  Within 72

22   hours of release from the custody of the Bureau of Prisons

23   you shall report in person to the Probation Office in the

24   district to which you are released.  While on supervised

25   release the defendant shall not commit any federal, state or

1    local crimes, shall be prohibited from possessing a firearm

2    or other dangerous device and shall not possess a controlled

3    substance.

4         In addition, the defendant shall comply with the

5    standard conditions of supervised release that have been

6    adopted by this Court with the following special conditions:

7         The defendant shall submit to a search of his

8    person or home conducted in a reasonable manner and at a

9    reasonable time by the United States probation officer.

10        The defendant shall maintain full time, legitimate

11   employment and not be unemployed for a term of more than 30

12   days unless excused by the United States Probation Officer.

13        Further, the defendant shall provide documentation

14   including but not limited to pay stubs, contractual

15   agreements, W2 wage and earning statements and other

16   documents requested by the United States probation officer.

17        The defendant shall obtain prior approval from the

18   United States Probation Officer before entering into any self

19   employment.

20        The defendant shall not incur any further debt,

21   including but not limited to loans, lines of credit or credit

22   card charges, either as a principal or cosigner, as an

23   individual or through any corporate entity without first

24   obtaining permission from the United States probation

25   officer.

1   Defendant is also prohibited from associating with

2   or visiting specific individuals or groups such as members or

3   groups advocating violence, documented organized crime

4   members, gang members or terrorists, or any place they are

5   known to frequent.

6       It is also ordered over the term of supervised

7   release you shall perform 200 hours of community service.

8   You obviously have the talent to give back to the community,

9   Mr. Bell, and I would like for you to have an immediate

10  return.

11      Hopefully working with your probation officer you

12  can come up with something -- you can have your children

13  perhaps involved so they too can see you in the positive role

14  of helping other people, and then you will have the immediate

15  realization of making a difference in someone's life that is

16  not as blessed as you.

17      You will find that in giving you receive in ways

18  that material goods can never satisfy.  It helps each of us

19  to be grateful for the many blessings we have been given.

20      Finally, it is ordered you shall pay to the United

21  States a special assessment of $100 as to Count 1, which I

22  note has already been paid.

23      Total sentence thirty months imprisonment, three

24  years supervised, release 200 hours of community service and

25  the $100 special assessment.  Again, restitution to be

1  determined at a later date.  Now that sentence has been

2  imposed does the defendant *or his counsel object to the*

3  *findings of fact or to the manner in which sentence has been*

4  *pronounced?*

5          MR. HARRIS:  No, Your Honor.  Thank you.

6          THE COURT:  Pursuant to Rule 32(c)(5) you have the

7  right to appeal to the conviction and sentence imposed. Any

8  notice of appeal must be filed within ten days after the

9  entry of the judgment in this case.

10          MR. McCORMICK:  Government at this time would move

11  to dismiss the remaining counts of the indictment.

12          THE COURT:  That is granted.  Good luck to you, Mr.

13  Bell.

14          THE DEFENDANT:  Thank you, Your Honor.

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate

transcription of proceedings in the above-entitled matter.

_____          _____
DATE FILED                   PATRICIA WOODLEY SANDERS, RPR

PATRICIA W. SANDERS, OFFICIAL COURT REPORTER
(305) 523-5654